Brian A. Knutsen, WSBA No. 38806
Jessica Durney, WSBA No. 57923
KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Tel.: (503) 841-6515 (Knutsen)
        (206) 739-5184 (Durney)
Email: brian@kampmeierknutsen.com
        jessica@kampmeierknutsen.com

Simone Anter, WSBA No. 52716
COLUMBIA RIVERKEEPER
1125 S.E. Madison Street, Suite 103A
Portland, Oregon 97214
Tel.: (541) 399-5312
Email: simone@columbiariverkeeper.org

*Attorneys for Plaintiff Columbia Riverkeeper*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

COLUMBIA RIVERKEEPER,

   Plaintiff,

   v.

WEYERHAEUSER NR COMAPNY,

   Defendant.

Case No. 3:22-cv-05132

COMPLAINT

## I.  INTRODUCTION.

1.  This action is a citizen suit brought under section 505 of the Clean Water Act

("CWA"), 33 U.S.C. § 1365, as amended. Plaintiff Columbia Riverkeeper ("Riverkeeper") seeks

declaratory and injunctive relief, the imposition of civil penalties, and the award of costs,

including attorneys' and expert witness fees, for Defendant Weyerhaeuser NR Company's

("Weyerhaeuser") repeated and ongoing violations of the terms and conditions of its National

COMPLAINT - 1
Case No. 3:22-cv-05132

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

Pollutant Discharge Elimination System ("NPDES") permit authorizing discharges of pollutants from Weyerhaeuser's facility to waters of the United States, and of the requirements of the Washington Department of Ecology's ("Ecology") Administrative Order No. 18227 issued to Weyerhaeuser on August 7, 2020 ("Ecology Order").

## II.    JURISDICTION AND VENUE.

2.      This Court has subject matter jurisdiction under section 505(a) of the CWA, 33 U.S.C. § 1365(a) (CWA citizen suit provision), and 28 U.S.C. § 1331 (federal question). Weyerhaeuser is in violation of an "effluent standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f), and "an order issued by . . . a State with respect to such a standard or limitation," 33 U.S.C. § 1365(a)(1). The relief requested herein is authorized by sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and 28 U.S.C. §§ 2201 and 2202.

3.      In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Riverkeeper notified Weyerhaeuser of its violations of the NPDES permit and the Ecology Order and of Riverkeeper's intent to sue under the CWA by letter dated and postmarked December 21, 2021 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. Riverkeeper also notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of Ecology by mailing copies of the Notice Letter to those officials on December 21, 2021.

4.      At the time of the filing of this complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

COMPLAINT - 2
Case No. 3:22-cv-05132

5.      The violations complained of in the Notice Letter are continuing and/or reasonably likely to recur. Weyerhaeuser is in violation of its NPDES permit and the Ecology Order.

6.      At the time of the filing of this complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.      The source of the violations complained of is located in Cowlitz County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

### III.      PARTIES.

8.      Plaintiff Columbia Riverkeeper is suing on behalf of itself and its members. Riverkeeper is a 501(c)(3) non-profit corporation registered in the State of Washington. Riverkeeper's mission is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. To achieve these objectives, Riverkeeper implements scientific, educational, and legal programs aimed at protecting water quality and habitat in the Columbia River Basin. This lawsuit is part of Riverkeeper's effort to improve water quality in the Columbia River Basin for purposes including recreation; habitat quality; and subsistence, recreational, and commercial fishing.

9.      Riverkeeper has representational standing to bring this action. Riverkeeper has over 16,000 members, many of whom reside in the vicinity of waters affected by Weyerhaeuser's discharges of pollutants. Members of Riverkeeper use and enjoy the waters and the surrounding areas that are adversely affected by Weyerhaeuser's discharges. Riverkeeper's members use these areas for, *inter alia*, fishing, swimming, hiking, walking, photography, boating, and observing wildlife. Weyerhaeuser has consistently violated the conditions of its

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

NPDES permit, including the permit's numeric effluent limitations, and Weyerhaeuser violated the conditions of the Ecology Order aimed at ameliorating the NPDES permit violations. Riverkeeper has serious concerns about the impacts of Weyerhaeuser's operations and pollution discharges on the Columbia River. Weyerhaeuser's operations and pollution discharges degrade water quality in the Columbia River Basin. The environmental, health, aesthetic, and recreational interests of Riverkeeper's members have been, are being, and will be adversely affected by Weyerhaeuser's violations of the NPDES permit and Ecology Order addressed herein and by the members' reasonable concerns related to the effects of the violations and pollutant discharges. These injuries are fairly traceable to the violations and redressable by this Court.

10.    Defendant Weyerhaeuser is a corporation organized and existing under the laws of the State of Washington and has a principal place of business at 220 Occidental Avenue South, Seattle, Washington 98104-3120.

11.    Weyerhaeuser owns and operates its industrial facility at or near 1999 Industrial Way, Longview, Washington 98632 (hereinafter "the Facility").

## IV.    LEGAL BACKGROUND.

12.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person unless authorized under certain provisions of the CWA, including an NPDES permit issued pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

13.    The State of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to section 402(b) of the CWA, 33 U.S.C. § 1342(b).

14.    Section 505(a) of the CWA, 33 U.S.C § 1365(a), provides that any citizen may commence a civil action against any person alleged to be in violation of an effluent standard or

COMPLAINT - 4
Case No. 3:22-cv-05132

limitation or an order issued by a State with respect to such a standard or limitation. Section 505(f), 33 U.S.C. § 1365(f), defines "effluent standard or limitation" to include an NPDES permit or condition of an NPDES permit. *See* 33 U.S.C. § 1341.

## V.    FACTS.

15.    On July 17, 2019, Ecology issued to Weyerhaeuser NPDES permit no. WA0991014 ("the Permit"), which became effective on August 1, 2019. The Permit imposes terms and conditions, including numeric effluent limits on discharges of process wastewater and stormwater, monitoring and sampling requirements, and reporting and recordkeeping requirements. The Permit also requires that Weyerhaeuser develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") that includes appropriate best management practices ("BMPs") and that applies all known and reasonable methods of pollution prevention, control, and treatment ("AKART") to discharges of stormwater associated with industrial activity.

16.    Weyerhaeuser discharges process wastewater to a wastewater treatment plant owned and operated by Nippon Dynawave Packing Company ("Nippon Dynawave"), which discharges to the Columbia River.

17.    Weyerhaeuser discharges stormwater associated with industrial activity and other pollutants via stormwater conveyance systems to the Columbia River and/or to Ditch No. 3 of the Consolidated Diking Improvement District No. 1, which discharges to the Columbia River.

18.    Weyerhaeuser has violated the terms and conditions of its Permit. Weyerhaeuser's violations of the Permit are set forth in section II of the Notice Letter, attached hereto as Exhibit 1 at 2–13, and are incorporated herein by this reference. In particular, and among the other violations described in the Notice Letter, Weyerhaeuser has violated the Permit by exceeding the Permit's numeric effluent limitations, failing to properly monitor and report discharges, and failing to develop and implement a SWPPP with adequate BMPs to control stormwater quality.

COMPLAINT - 5
Case No. 3:22-cv-05132

19.     The Ecology Order was issued on August 7, 2020 in an effort to require that Weyerhaeuser comply with the conditions of the Permit and to otherwise comply with applicable CWA standards and limitations. The Ecology Order required, *inter alia*, that Weyerhaeuser develop and implement a plan to evaluate and characterize stormwater discharges and prepare and submit an updated application for an NPDES permit.

20.     Weyerhaeuser has violated the requirements of the Ecology Order. Weyerhaeuser's violations of the Ecology Order are set forth in section III of the Notice Letter, attached hereto as <u>Exhibit 1</u> at 13–15, and are incorporated herein by this reference. In particular, and among the other violations described in the Notice Letter, Weyerhaeuser failed to timely develop and implement a plan to evaluate and characterize stormwater discharges that met the requirements of the Ecology Order.

**A.     Weyerhaeuser's Violations of the Permit.**

**Violations of Numeric Effluent Limitations for Discharges of Process Wastewater to Nippon Dynawave Industrial Treatment Plant.**

21.     The Permit requires that Weyerhaeuser's discharges of process wastewater to Nippon Dynawave's wastewater treatment plant comply with minimum and maximum limits on pH at Outfalls 001B, 002B, 005B, 006B, and 008B. The minimum limitation is 5.0 standard units and the maximum is 11.0 standard units ("S.U."). The Permit requires that Weyerhaeuser monitor these discharges at least weekly.

22.     Weyerhaeuser has violated the Permit by exceeding the numeric effluent limitations for these discharges, including the following exceedances of the minimum limit of 5.0 S.U. at Outfall 002B: 4.74 S.U. on September 10, 2019 (September 2019, week two); and 4.89 S.U. on October 19, 2021 (October 2021, week four). These requirements of the Permit and

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

Weyerhaeuser's violations thereof are described in section II.A of the Notice Letter, attached hereto as Exhibit 1 at 2–3, and are incorporated herein by this reference

**Violations of Numeric Effluent Limitations for Discharges of Stormwater.**

23.     The Permit requires that Weyerhaeuser's discharges of stormwater associated with industrial activities and other pollutants at Outfalls 003B and 004B comply with specific numeric effluent limitations. These include, but are not limited to, effluent limits on Biochemical Oxygen Demand ("BOD5"), dissolved oxygen, settleable solids, oil & grease, turbidity, and pH.

24.     Weyerhaeuser has repeatedly violated, and continues to violate, these effluent limitations. These Permit requirements and Weyerhaeuser's violations thereof are described in section II.B of the Notice Letter, attached hereto as Exhibit 1 at 3–7, and are incorporated herein by this reference. Further, attached hereto as Exhibit 2 is a table summarizing these numeric effluent limitations and Weyerhaeuser's violations thereof.

**Violations of Monitoring and Reporting Requirements.**

25.     The Permit establishes monitoring requirements for discharges from Weyerhaeuser's various outfalls. The Permit requires that Weyerhaeuser report the results of discharge monitoring to Ecology on Discharge Monitoring Reports ("DMRs"). Weyerhaeuser has violated these conditions each and every time it has failed to collect and analyze discharge samples and report the results to Ecology on DMRs in compliance with the requirements of the Permit. These Permit requirements and Weyerhaeuser's violations thereof are described in section II.C of the Notice Letter, attached hereto as Exhibit 1 at 7–8, and in the table attached hereto as Exhibit 3, both of which are incorporated herein by this reference.

26.     The Permit requires Weyerhaeuser to submit monthly DMRs by the 15th day of the following month. Weyerhaeuser violated these requirements by failing to timely submit all of its monthly DMRs, including but not limited to, the August 2019, October 2019, September

COMPLAINT - 7
Case No. 3:22-cv-05132

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

2019, November 2019, December 2019, January 2020, and February 2020 monthly DMRs. These Permit requirements and Weyerhaeuser's violations thereof are described in section II.C of the Notice Letter, attached hereto as <u>Exhibit</u> 1 at 8, and are incorporated herein by this reference.

27.     The Permit requires Weyerhaeuser to submit quarterly DMRs by the 15th day of the month following the monitoring period. Weyerhaeuser violated this requirement by failing to timely submit all of its quarterly DMRs, including but not limited to, the DMRs for the First Quarter of 2020, the Second Quarter of 2020, the Third Quarter of 2020, the Fourth Quarter of 2020, the First Quarter of 2021, the Second Quarter of 2021, and the Third Quarter of 2021. These Permit requirements and Weyerhaeuser's violations thereof are described in section II.C of the Notice Letter, attached hereto as <u>Exhibit</u> 1 at 8, and are incorporated herein by this reference.

**Violations of the Operations and Maintenance Manual Requirements.**

28.     The Permit requires Weyerhaeuser to prepare an Operations and Maintenance ("O&M") Manual intended to ensure compliance with the Permit that meets specific requirements. Weyerhaeuser must submit the O&M Manual to Ecology by February 1, 2020, review the O&M Manual annually and provide confirmation of review yearly by February 1 to Ecology, submit to Ecology for review and approval any substantial changes or updates to the O&M Manual, keep the O&M Manual at the Facility, and follow the O&M Manual at all times.

29.     Weyerhaeuser has violated the Permit by failing to timely develop and/or implement an O&M Manual that meets the Permit's requirements. These Permit conditions and Weyerhaeuser's violations thereof are described in section II.D of the Notice Letter, attached hereto as <u>Exhibit 1</u> at 8–9, and are incorporated herein by this reference.

COMPLAINT - 8
Case No. 3:22-cv-05132

**Violations of Compliance Schedule Requirements.**

30.     The Permit requires Weyerhaeuser to complete a series of tasks for the implementation of AKART at Outfalls 003 and 004 by specified dates and, if Weyerhaeuser cannot complete the tasks by that date, it must submit notification to Ecology no later than the required completion date for the task. The notification must include the reason(s) for the delay, steps taken to return to the established schedule, and date Weyerhaeuser expects to complete the task.

31.     Weyerhaeuser has violated the Permit's compliance schedule requirements. These Permit conditions and Weyerhaeuser's violations thereof are described in section II.E of the Notice Letter, attached hereto as Exhibit 1 at 9–10, and are incorporated herein by this reference.

**Violations of the SWPPP Requirements.**

32.     Weyerhaeuser's extensive violations of the Permit, including its extensive exceedances of numeric effluent limits at Outfalls 003 and 004, indicate that Weyerhaeuser is failing to develop and implement a SWPPP that fully complies with the Permit and that Weyerhaeuser is otherwise failing to apply AKART to its discharges.

33.     Upon information and belief, Weyerhaeuser is in violation of the Permit by not developing and/or implementing a SWPPP that fully complies with the Permit and by not applying AKART to discharges. These violations include Weyerhaeuser's failure to conduct and document visual inspections as required by the Permit.

34.     The Permit's SWPPP requirements and Weyerhaeuser's violations thereof are described in section II.F of the Notice Letter, attached hereto as Exhibit 1 at 10–12, and are incorporated herein by this reference.

COMPLAINT - 9
Case No. 3:22-cv-05132

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

**Violation of Requirements for Reporting Permit Violations.**

35.     The Permit requires Weyerhaeuser to take certain reporting and other responsive actions each time it is unable to comply with conditions of the Permit. Weyerhaeuser has repeatedly violated these requirements by failing to timely notify Ecology of the noncompliance, failing to timely submit complete reports for the noncompliance, and failing to take the required responsive actions. These Permit requirements and Weyerhaeuser's violations thereof are described in section II.G of the Notice Letter, attached hereto as Exhibit 1 at 12–13, and are incorporated herein by this reference.

**B.     Weyerhaeuser's Violations of the Ecology Order.**

36.     The Ecology Order required that Weyerhaeuser prepare a Stormwater System Evaluation that meets specified requirements and submit it to Ecology for review and approval by November 1, 2020. Weyerhaeuser violated these requirements by failing to timely prepare and submit to Ecology the Stormwater System Evaluation that meets the requirements of the Ecology Order. These requirements, and Weyerhaeuser's violations thereof, are described in section III of the Notice Letter, attached hereto as Exhibit 1 at 13, and are incorporated herein by this reference.

37.     The Ecology Order required that Weyerhaeuser develop a Stormwater Characterization Study Sampling Plan that meets specified requirements, submit the plan to Ecology for review and approval by November 1, 2020, and complete the Stormwater Characterization Study by March 15, 2021 in accordance with an Ecology-approved plan. Weyerhaeuser violated these requirements by failing to timely develop a Stormwater Characterization Study Sampling Plan that meets the requirements of the Ecology Order, by failing to timely implement an Ecology-approved Stormwater Characterization Study Sampling Plan, and by failing to timely prepare a Stormwater Characterization Study that meets the

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

requirements of the Ecology Order. These requirements of the Ecology Order and Weyerhaeuser's violations thereof are described in section III of the Notice Letter, attached hereto as Exhibit 1 at 13–14, and are incorporated herein by this reference.

38.     The Ecology Order required that Weyerhaeuser submit to Ecology for approval an updated NPDES permit application that includes specific information and that meets certain requirements by March 15, 2021. Weyerhaeuser violated these requirements by failing to timely submit an updated NPDES permit application that complies with the requirements of the Ecology Order. These requirements of the Ecology Order and Weyerhaeuser's violations thereof are described in section III of the Notice Letter, attached hereto as Exhibit 1 at 14–15, and are incorporated herein with this reference.

39.     The violations of the Permit and Ecology Order alleged herein are ongoing because they are continuing and/or are reasonably likely to recur. For example, Weyerhaeuser is continuing to violate applicable numeric effluent limitations and is failing to implement a SWPPP that complies with AKART.

40.     Discharges from Weyerhaeuser's Facility contribute to the polluted conditions of the waters of the United States, including the Columbia River and Ditch No. 3 of the Consolidated Diking Improvement District No. 1. Discharges from Weyerhaeuser's Facility contribute to the ecological impacts that result from the polluted condition of these waters and to Riverkeeper's and its members' injuries resulting therefrom.

41.     The vicinity of the Facility's discharges are used by the citizens of Washington and Oregon and visitors, as well as at least one of Riverkeeper's members, for activities including swimming, boating, biking, fishing and nature watching. Riverkeeper's members also derive aesthetic benefits from the receiving waters. Riverkeeper's and its members' enjoyment of

these activities and waters is diminished by the polluted state of the receiving waters and by Weyerhaeuser's contributions to such a polluted state.

42.     A significant penalty should be imposed against Weyerhaeuser under the penalty factors set forth in section 309(d) of the CWA, 33 U.S.C. § 1319(d).

43.     Weyerhaeuser's violations were avoidable had Weyerhaeuser been diligent in overseeing the Facility's operations and maintenance.

44.     Weyerhaeuser has benefited economically as a consequence of its violations and its failure to implement improvements at the facility.

45.     In accordance with section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4, Riverkeeper will mail either a filed, date-stamped copy of this complaint or a conformed copy of this complaint after it is filed to the Administrator of the EPA, the Regional Administrator for Region 10 of the EPA, and the Attorney General of the United States.

## VI.     CAUSE OF ACTION.

46.     The preceding paragraphs and the allegations in sections II and III of the Notice Letter, attached hereto as Exhibit 1 at 2–15, are incorporated herein by this reference.

47.     Weyerhaeuser's violations of the Permit and the Ecology Order described herein and in the Notice Letter constitute violations of an "effluent standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f), and an "order issued by . . . a State with respect to such a standard or limitation," 33 U.S.C. § 1365(a)(1).

48.     Upon information and belief, Weyerhaeuser's violations are continuing or are reasonably likely to continue to recur. Any and all additional violations of the Permit and the Ecology Order that occur after the date of Riverkeeper's Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this complaint.

COMPLAINT - 12
Case No. 3:22-cv-05132

49.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Weyerhaeuser is likely to continue to violate the Permit and the Ecology Order to the further injury of Riverkeeper, its member(s), and the public.

### VII.    RELIEF REQUESTED.

Wherefore, Riverkeeper respectfully requests that this Court grant the following relief:

A.      Issue a declaratory judgment that Weyerhaeuser violated, and continues to be in violation of, the Permit and the Ecology Order;

B.      Enjoin Weyerhaeuser from operating the Facility in a manner that results in further violations of the Permit and the Ecology Order;

C.      Order Weyerhaeuser to immediately implement a SWPPP that complies with the Permit and the Ecology Order;

D.      Order Weyerhaeuser to provide Riverkeeper, for a period beginning on the date of the Court's Order and running for one year after Weyerhaeuser achieves compliance with all of the conditions of the Permit and the Ecology Order, with copies of all reports and other documents that Weyerhaeuser submits to or receives from Ecology and/or EPA regarding Weyerhaeuser's coverage under the Permit and compliance with the Ecology Order, at the same time those documents are submitted to or received from Ecology and/or EPA;

E.      Order Weyerhaeuser to take specific actions to remediate the environmental harm caused by its violations;

F.      Grant such other preliminary and/or permanent injunctive relief as Riverkeeper may from time to time request during the pendency of this case;

G.      Order Weyerhaeuser to pay civil penalties as authorized by sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19.

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

1    H.    Award Riverkeeper its litigation expenses, including reasonable attorneys' and

2 expert witness fees, as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d), or as

3 otherwise authorized by law; and

4    I.    Award such other relief as this Court deems appropriate.

5    RESPECTFULLY SUBMITTED this 7th day of March, 2022.

6

7    KAMPMEIER & KNUTSEN, PLLC

8    By:  s/ Brian A. Knutsen
9    Brian A. Knutsen, WSBA No. 38806
     1300 S.E. Stark Street, Suite 202
10   Portland, Oregon 97214
     Tel: (503) 841-6515
11   Email: brian@kampmeierknutsen.com

12

13   By:  s/ Jessica Durney
     Jessica Durney, WSBA No. 57923
14   811 First Avenue, Suite 468
     Seattle, Washington 98104
15   Tel.: (206) 739-5184
     Email: jessica@kampmeierknutsen.com
16

17   COLUMBIA RIVERKEEPER

18   By:  s/ Simone Anter
19   Simone Anter, WSBA No. 52716
     1125 S.E. Madison Street, Suite 103A
20   Portland, Oregon 97214
     Tel.: (541) 399-5312
21   Email: simone@columbiariverkeeper.org

22
     *Attorneys for Plaintiff Columbia Riverkeeper*
23

24

25

26

27

28

COMPLAINT - 14
Case No. 3:22-cv-05132

# EXHIBIT 1

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

BRIAN A. KNUTSEN
Licensed in Oregon & Washington
503.841.6515
brian@kampmeierknutsen.com

December 21, 2021

**Via CERTIFIED MAIL – Return Receipt Requested**

Managing Agent                          Managing Agent
Weyerhaeuser NR Company                 Weyerhaeuser NR Company
P.O. Box 931                            1999 Industrial Way
Longview, WA 98632                      Longview, WA 98632

Managing Agent
Weyerhaeuser NR Company
220 Occidental Ave S.
Seattle, WA 98104-3120

**Re:    NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT**

Dear Managing Agent:

This letter is submitted on behalf of Columbia Riverkeeper, 407 Portway Ave, Suite 301, Hood River, OR 97031. This letter provides you with 60 days of notice of Columbia Riverkeeper's intent to file a citizen suit against Weyerhaeuser NR Company ("Weyerhaeuser") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C § 1365, for the violations described below.

On July 17, 2019, the Washington Department of Ecology ("Ecology") issued to Weyerhaeuser National Pollution Discharge Elimination System ("NPDES") permit No. WA0991014 ("the Permit"), which became effective on August 1, 2019. Weyerhaeuser has violated and continues to violate the terms and conditions of the Permit with respect to the operation of, and discharges of pollutants from, its facility located at or near 1999 Industrial Way, Longview, Washington 98632 (the "facility"). Weyerhaeuser has further violated and continues to violate the requirements of Ecology Administrative Order No. 18227 issued to Weyerhaeuser on August 7, 2020. The facility subject to this notice includes any contiguous or adjacent properties owned and/or operated by Weyerhaeuser and any other properties subject to the Permit.

## I.   COLUMBIA RIVERKEEPER'S COMMITMENT TO PROTECTING A FISHABLE AND SWIMMABLE COLUMBIA RIVER.

Columbia Riverkeeper's mission is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. Columbia Riverkeeper is a non-profit organization with members who live, recreate, and work throughout the Columbia River basin, including near and downstream of Weyerhaeuser's facility.

Threats facing the Columbia River are severe by any measure. *See Columbia River Basin State of the River Report for Toxics,* Environmental Protection Agency, Region 10 (January 2009) (available online at: https://www.epa.gov/columbiariver/2009-state-river-report-toxics). In fact, the vast majority of rivers and streams in Washington fail to meet basic state water quality standards for pollutants such as toxics and temperature. *See* State of Washington 303(d) List (available online at: https://ecology.wa.gov/Water-Shorelines/Water-quality/Water-improvement/Assessment-of-state-waters-303d). Water quality standards are designed to protect designated uses, including aquatic life, fishing, swimming, and drinking water.

This Notice of Intent to Sue Weyerhaeuser is part of Columbia Riverkeeper's effort to improve water quality in the Columbia River Basin for purposes including swimming, habitat quality, and subsistence, recreational, and commercial fishing. Columbia Riverkeeper has serious concerns about the impacts of Weyerhaeuser's operations and pollution discharges on the Columbia River. As discussed below, Weyerhaeuser has repeatedly discharged contaminates in excess of the Permit's effluent limitations. Weyerhaeuser's operations and pollution discharges degrade water quality in the Columbia River Basin and may contribute to conditions that place the health of those who use the Columbia River at risk.

## II.   WEYERHAEUSER'S VIOLATIONS OF THE PERMIT.

### A.   Violations of Numeric Effluent Limitations for Discharges of Process Wastewater to Nippon Dynawave Industrial Treatment Plant.

Condition S1.A of the Permit requires that Weyerhaeuser's process wastewater discharges to the Nippon Dynawave Packaging Company, LLC industrial wastewater treatment plant comply with minimum and maximum limits on pH at Outfalls 001B, 002B, 005B, 006B, and 008B. The minimum limitation is 5.0 standard units and the maximum is 11.0 standard units. Condition S2.A of the Permit requires that Weyerhaeuser monitor its discharges of process wastewater to the Nippon Dynawave Industrial Treatment Plant at least weekly. Nippon has violated the Permit by exceeding the numeric effluent limitation for these discharges as follows:

| Effluent Limitation Violations at Outfall 002B Process Wastewater to Nippon Treatment Plant | | | |
|---|---|---|---|
| Monitoring Period | Parameter | Effluent Limit | Monitoring Result |
| 9/10/19 (Wk. 2) | pH (weekly) | >5.0 | 4.74 |
| 10/19/2021 (Wk. 4) | pH (weekly) | >5.0 | 4.89 |

Pursuant to Condition S1 of the Permit, each exceedance noted above constitutes a violation of the Permit.

**B.    Violations of Numeric Effluent Limitations for Discharges of Stormwater.**

Condition S1.B of the Permit requires that Weyerhaeuser's stormwater discharges at Outfalls 003B and 004B comply with specific numeric effluent limitations. For parameters Biochemical Oxygen Demand ("BOD5"), settleable solids, oil & grease, and turbidity, Weyerhaeuser must meet an average monthly and a maximum daily limit. For copper, Weyerhaeuser must meet an average quarterly and maximum daily limit. For dissolved oxygen, Weyerhaeuser must meet an average monthly minimum and a minimum daily limit. For pH, Weyerhaeuser must meet a daily minimum and daily maximum. The specific effluent limitations are as follows:

| Effluent Limits: East Pond (Outfall 003B) Latitude 46.1175    Longitude 122.954167 | | |
|---|---|---|
| **Parameter** | **Average Monthly [a]** | **Maximum Daily [b]** |
| Biochemical Oxygen Demand (5-day) (BOD$_5$) | 117.6 milligrams per liter (mg/L) | 354.8 milligrams per liter (mg/L) |
| Settleable Solids (SS) | N/A | 0.1 milliliters per liter (mL/L) |
| **Parameter** | **Average Monthly [a]** | **Maximum Daily [b]** |
| Oil & Grease | 10 mg/L | 15 mg/L |
| Turbidity | 372 NTU | 1110 NTU |
| **Parameter** | **Average Quarterly [e]** | **Maximum Daily [b]** |
| Copper | 13.6 micrograms per liter (μg/L) | 34.5 micrograms per liter (μg/L) |
| **Parameter** | **Average Monthly Minimum [c]** | **Minimum Daily [d]** |
| Dissolved Oxygen | 4.7 mg/L | 1.9 mg/L |
| **Parameter** | **Daily Minimum** | **Daily Maximum** |
| pH | 6.0 standard units | 9.0 standard units |
| a | Average monthly effluent limit means the highest allowable average of daily discharges over a calendar month. To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a calendar month and divide this sum by the total number of daily discharges measured. | |

| b | Maximum daily effluent limit is the highest allowable daily discharge. The daily discharge is the average discharge of a pollutant measured during a calendar day. For pollutants with limits expressed in units of mass, calculate the daily discharge as the total mass of the pollutant discharged over the day.  This does not apply to pH or temperature. |
| --- | --- |
| c | Average monthly minimum effluent limit means the lowest allowable average of daily discharges over a calendar month. To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a calendar month and divide this sum by the total number of daily discharges measured. |
| d | Minimum daily effluent limit is the lowest allowable daily discharge. The daily discharge is the average discharge of a pollutant or parameter measured during a calendar day. For pollutants with limits expressed in units of mass, calculate the daily discharge as the total mass of the pollutant discharged over the day. |
| e | Average quarterly effluent limit means the highest allowable average of daily discharges over a quarter (January - March, April - June, July - September, and October - December). To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a quarter and divide this sum by the total number of daily discharges measured during that quarter. |

| Effluent Limits: Outfall 004B Latitude 46.123611    Longitude 122.963889 | | |
| --- | --- | --- |
| **Parameter** | **Average Monthly [a]** | **Maximum Daily [b]** |
| Biochemical Oxygen Demand (5-day) (BOD$_5$) | 7.1 milligrams per liter (mg/L) | 20.0 milligrams per liter (mg/L) |
| Settleable Solids (SS) | N/A | 0.1 mL/L |
| Oil & Grease | 10 mg/L | 15 mg/L |
| Turbidity | 45 NTU | 103 NTU |
| **Parameter** | **Average Monthly Minimum [c]** | **Minimum Daily [d]** |
| Dissolved Oxygen | 2.5 mg/L | 1.8 mg/L |
| **Parameter** | **Daily Minimum** | **Daily Maximum** |
| pH | 6.0 standard units | 9.0 standard units |
| a | Average monthly effluent limit means the highest allowable average of daily discharges over a calendar month. To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a calendar month and divide this sum by the total number of daily discharges measured. | |

| b | Maximum daily effluent limit is the highest allowable daily discharge. The daily discharge is the average discharge of a pollutant measured during a calendar day. For pollutants with limits expressed in units of mass, calculate the daily discharge as the total mass of the pollutant discharged over the day.  This does not apply to pH or temperature. |
|---|---|
| c | Average monthly minimum effluent limit means the lowest allowable average of daily discharges over a calendar month. To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a calendar month and divide this sum by the total number of daily discharges measured. |
| d | Minimum daily effluent limit is the lowest allowable daily discharge. The daily discharge is the average discharge of a pollutant or parameter measured during a calendar day. For pollutants with limits expressed in units of mass, calculate the daily discharge as the total mass of the pollutant discharged over the day. |

Weyerhaeuser has repeatedly violated these effluent limitations as summarized in the following tables:

| Effluent Limitation Violations at Outfall 003B Stormwater Discharges to CDID No. 3 | | | |
|---|---|---|---|
| Monitoring Period | Parameter | Effluent Limit | Monitoring Result |
| 10/1/2019 (Wk. 1) | Settleable Solids | <0.1 mL/L, Daily max | 0.3 mL/L |
| May 2020 | Oil & Grease | < 10 mg/L, monthly avg. | 10.7 mg/L |
| 11/10/2020 (Wk. 2) | Settleable Solids | <0.1 mL/L, Daily max | 0.1 mL/L |
| 2/12/2021 | pH | >= 6.0, daily minimum | 5.5 |
| 2/25/2021 | pH | >= 6.0, daily minimum | 5.84 |
| 2/26/2021 | pH | >= 6.0, daily minimum | 5.76 |
| 9/21/2021 (Wk. 4) | Settleable Solids | <0.1 mL/L, Daily max | 0.2 mL/L |
| 11/17/2021 | pH | >= 6.0, daily minimum | 5.79 |

| Effluent Limitation Violations at Outfall 004B Stormwater Discharges to CDID No. 3 | | | |
|---|---|---|---|
| Monitoring Period | Parameter | Effluent Limit | Monitoring Result |
| 9/10/2019 | BOD5 | 20 mg/L, daily max | 33 mg/L |
| September 2019 | BOD5 | 7.1 mg/L, monthly avg. max | 13.175 mg/L |
| 11/26/2019 | BOD5 | 20 mg/L, daily max | 27 mg/L |
| November 2019 | BOD5 | 7.1 mg/L, monthly avg. max | 14.5 mg/L |
| November 2019 | Turbidity | 45 NTU, monthly average | 64.6 NTU |
| 12/3/2019 | BOD5 | 20 mg/L, daily max | >87 mg/L |
| 12/10/2019 | BOD5 | 20 mg/L, daily max | 57 mg/L |

| | | | |
|---|---|---|---|
| 12/23/2019 | BOD5 | 20 mg/L, daily max | 36 mg/L |
| 12/30/2019 | BOD5 | 20 mg/L, daily max | 24 mg/L |
| December 2019 | BOD5 | 7.1 mg/L, monthly avg. max | 44.4 mg/L |
| December 2019 | Turbidity | 45 NTU, monthly average | 68.2 NTU |
| 1/28/2020 | BOD5 | 20 mg/L, daily max | 25 mg/L |
| January 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 13.5 mg/L |
| January 2020 | Turbidity | 45 NTU, monthly average | 46.6 NTU |
| February 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 17.4 mg/L |
| 2/17/2020 | BOD5 | 20 mg/L, daily max | 23 mg/L |
| February 2020 | Turbidity | 45 NTU, monthly average | 52.98 NTU |
| March 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 11.56 mg/L |
| 3/31/2020 | BOD5 | 20 mg/L, daily max | 25 mg/L |
| March 2020 | Turbidity | 45 NTU, monthly average | 63.76 NTU |
| 3/31/2020 | Turbidity | 103 NTU, daily max | 127 NTU |
| April 2020 | Turbidity | 45 NTU, monthly average | 45.64 NTU |
| April 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 10.4 mg/L |
| 4/23/2020 | BOD5 | 20 mg/L, daily max | 29 mg/L |
| May 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 11.85 mg/L |
| 5/12/2020 | BOD5 | 20 mg/L, daily max | 22 mg/L |
| October 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 7.75 mg/L |
| November 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 36.9 mg/L |
| 11/3/2020 | BOD5 | 20 mg/L, daily max | 39.9 mg/L |
| 11/10/2020 | BOD5 | 20 mg/L, daily max | 34 mg/L |
| 11/17/2020 | BOD5 | 20 mg/L, daily max | 45.2 mg/L |
| 11/24/2020 | BOD5 | 20 mg/L, daily max | 28.5 mg/L |
| November 2020 | Dissolved Oxygen | >= 2.5 mg/L, av monthly | 1.82 mg/L |
| November 2020 | Turbidity | 45 NTU, monthly average | 65 NTU |
| 12/1/2020 | BOD5 | 20 mg/L, daily max | 37.8 mg/L |
| 12/22/2020 | BOD5 | 20 mg/L, daily max | 29.5 mg/L |

| December 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 20.1 mg/L |
|---|---|---|---|
| December 2020 | Turbidity | 45 NTU, monthly average | 47.7 NTU |
| 1/5/2021 | BOD5 | 20 mg/L, daily max | 33.3 mg/L |
| January 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 18.1 mg/L |
| 1/12/2021 | Turbidity | 103 NTU, daily max | 193 NTU |
| January 2021 | Turbidity | 45 NTU, monthly average | 85 NTU |
| February 2021 | Turbidity | 45 NTU, monthly average | 47.3 NTU |
| 3/2/2021 | BOD5 | 20 mg/L, daily max | 21.7 mg/L |
| March 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 12.9 mg/L |
| March 2021 | Turbidity | 45 NTU, monthly average | 49.6 NTU |
| May 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 7.15 mg/L |
| May 2021 | Turbidity | 45 NTU, monthly average | 45.8625 NTU |
| June 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 8.4 mg/L |
| 6/15/2021 | BOD5 | 20 mg/L, daily max | 24.3 mg/L |
| July 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 13.2 mg/L |
| 7/6/2021 | BOD5 | 20 mg/L, daily max | 44.3 mg/L |
| August 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 20.95 mg/L |
| 8/17/2021 | BOD5 | 20 mg/L, daily max | 94.9 mg/L |
| 9/14/2021 (Wk. 3) | Settleable Solids | <0.1 mL/L, Daily max | 1.4 mL/L |

The dates on which Weyerhaeuser collected the monitoring samples to calculate the monthly average values shown are identified in Weyerhaeuser's discharge monitoring reports. Pursuant to Condition S1 of the Permit, each exceedance noted above constitutes a violation of the Permit.

### C.     Violations of Monitoring and Reporting Requirements.

Condition S2.A of the Permit establishes monitoring requirements for discharges from Weyerhaeuser's various outfalls. Condition S3.A of the Permit requires that Weyerhaeuser report the results of discharge monitoring to Ecology on DMRs. Weyerhaeuser has violated these conditions each and every time it has failed to collect and analyze discharge samples and report the results to Ecology on DMRs in compliance with the requirements of the Permit, including but not limited to the following instances:

| Violations of the Discharge Monitoring and Reporting Requirements | | |
|---|---|---|
| Monitoring Period | Outfall(s) | Parameter / Monitoring Frequency |
| August 2019 | 002B, 005B, 006B | Total Suspended Solids / Monthly |
| August 4–10, 2019 (wk. 2) | 002B | pH / Weekly |
| October 1 – November 25, 2019 | 003B | Flow, continuous |
| October 2019 | 002B, 005B, 006B | Total Suspended Solids / Monthly |
| March 14–20, 2021 (wk. 3) | 003B, 004B | Settleable Solids / weekly |
| July 18–24, 2021 (wk. 4) | 003B, 004B | Settleable Solids / weekly |
| August 14 – September 10, 2021 | 004B | Flow, continuous |

Condition S3.A.3.a of the Permit requires Weyerhaeuser to submit monthly DMRs by the 15th day of the following month. Weyerhaeuser failed to timely submit the August 2019, October 2019, November 2019, December 2019, January 2020, and February 2020 monthly DMRs because it submitted them on June 15, 2020. Weyerhaeuser similarly failed to timely submit the September 2019 monthly DMR because it submitted it on January 16, 2020.

Condition S3.A.3.b requires Weyerhaeuser to submit quarterly DMRs by the 15th day of the month following the monitoring period. Weyerhaeuser failed to timely submit the DMRs for the First Quarter of 2020, the Second Quarter of 2020, the Third Quarter of 2020, and the Fourth Quarter of 2020 because it submitted the DMRs on May 15, 2020 (due by April 15, 2020), August 11, 2020 (due by July 15, 2020), November 12, 2020 (due by October 15, 2020), and February 15, 2021 (due by January 15, 2021), respectively.

Weyerhaeuser also failed to timely submit the DMRs for the First Quarter of 2021, the Second Quarter of 2021, and the Third Quarter of 2021 because it submitted the DMRs on May 14, 2021 (due by April 15, 2021), July 28, 2021 (due by July 15, 2021), and November 15, 2021 (due by October 15, 2021).

## D.   Violations of Requirements for Operations and Maintenance Manual.

Condition S4 of the Permit requires that Weyerhaeuser at all times properly operate and maintain all facilities or systems of control that are installed to achieve compliance with the terms and conditions of the Permit. To effectuate this, Condition S4.A of the Permit requires Weyerhaeuser to prepare an Operations and Maintenance ("O&M") Manual. Condition S4.A.a of the Permit provides that the O&M Manual must meet the requirements of WAC 173-240-150; be submitted to Ecology by February 1, 2020; be reviewed annually, with confirmation of review provided yearly by February 1 to Ecology; be submitted to Ecology for review and approval for any substantial changes or updates to the O&M Manual; be kept at the facility; and be followed by Weyerhaeuser at all times. Condition S4.A.b of the Permit defines the required components of the O&M Manual, in addition to those required by WAC 173-240-150. These include emergency

procedures for plant shutdown and cleanup in the event of a wastewater or stormwater system upset, spill, failure, or demand by the privately owned treatment system treating the discharge; a review of all of the wastewater and stormwater systems components which, if failed, could pollute surface water, could cause impacts to the privately owned treatment system, or could impact human health, and a procedure for a routine schedule of checking the function of these components; wastewater system maintenance procedures; directions to maintenance staff when cleaning or performing necessary tasks; wastewater and stormwater sampling protocols and procedures for compliance; minimum staffing adequate to operate and maintain the collection and treatment processes and carry out compliance monitoring required by the permit; and Outfall 003B Drainage Area operation and maintenance activities. Upon information and belief, Weyerhaeuser is in violation of the Permit requirements discussed above because it has not developed and/or is not fully implementing an O&M Manual that meets each requirement of Condition S4.A.b of the Permit identified above; such deficiencies include, but are not limited to, those identified by Ecology's notice to Weyerhaeuser on April 2, 2020.

### E.   Violations of Compliance Schedule Requirements.

Condition S9 of the Permit requires Weyerhaeuser to complete a series of tasks by specified dates, and if Weyerhaeuser cannot complete the tasks by that date, it must submit notification to Ecology no later than the required completion date for the task. The notification must include the reason(s) for the delay, steps taken to return to the established schedule, and date Weyerhaeuser expects to complete the task.

Condition S9.1 of the Permit requires that Weyerhaeuser submit for approval Plans and Specifications or As-Built Drawings for the East Pond by February 1, 2020. The drawings must include, at a minimum, the depth of the pond following dredging activities, the turbidity curtain location and installation procedures, and the automated pH adjustment system location and installation procedures. Upon information and belief, Weyerhaeuser violated these requirements because it did not timely submit materials that meet each of the requirements of Condition S9.1 of the Permit identified above; such deficiencies include, but are not limited to, those identified by Ecology's notice to Weyerhaeuser on April 1, 2020.

Condition S9.2 of the Permit requires that Weyerhaeuser submit for approval Plans and Specifications or As-Built Drawings for the Stormwater Conveyance Ditches by April 1, 2020. The drawings must include, at a minimum, the locations of each check dam, the installation procedures for the check dams in the conveyance ditches, the dimensions of all widened stormwater conveyance ditches, and the procedures for reinforcing and vegetating the conveyance ditches. Upon information and belief, Weyerhaeuser violated these requirements because it failed to timely submit the As-Built Drawings for the Stormwater Conveyance Ditches, which was submitted on June 1, 2020, and because the submission does not meet each of the requirements of Condition S9.2 of the Permit identified above.

Condition S9.3 of the Permit requires Weyerhaeuser to submit to Ecology for review a Phase 1 AKART Report by December 1, 2020. The Report must include, at a minimum, the dates that Weyerhaeuser completed the following Phase 1 activities: dredging the East Pond; installing the turbidity curtain in the East Pond; installing the automated pH adjustment system at

the inlet of the East Pond; widening the stormwater conveyance ditches, if completed; vegetating and reinforcing the stormwater conveyance ditches; installing check dams in the conveyance ditches; and installing enhanced inlet protection at the Export Dock. Moreover, the Report must include an analysis of the treatment impacts of the completed activities, including a review of the treatment levels achieved due to the Phase 1 improvements. The review period must cover the time frame between September 1, 2018 and August 31, 2020, at a minimum. Upon information and belief, Weyerhaeuser is in violation of these requirements because it failed to timely submit a report that meets all the requirements of Condition S9.3 of the Permit identified above.

### F.      Violations of Stormwater Pollution Prevention Plan Requirements.

Columbia Riverkeeper hereby provides notice, based upon information and belief, that Weyerhaeuser has not developed and implemented a SWPPP that complies with the requirements of the Permit. The extensive violations of the Permit and the ongoing discharges of polluted industrial stormwater documented in the publicly available records indicate that Weyerhaeuser is not fully implementing a SWPPP that includes adequate BMPs and that otherwise includes all of the required SWPPP components. The violations of the Permit's SWPPP provisions have occurred each and every day since August 1, 2019 and continue to occur each day.

Condition S13.A of the Permit required Weyerhaeuser to prepare and submit to Ecology an update to its SWPPP by August 1, 2020. Conditions S13.A.1 through S13.A.4 of the Permit require Weyerhaeuser to update the SWPPP, review that updated SWPPP and update it as necessary, follow the current SWPPP and implement all updates to the SWPPP within 30 days of its revision, and keep the current SWPPP on site and readily available to facility personnel. Upon information and belief, Weyerhaeuser submitted an updated SWPPP in July 2020. Weyerhaeuser has failed to develop and implement a SWPPP that meets all requirements of Condition S13 of the Permit for reasons including, but not limited to, those identified below.

The SWPPP fails to satisfy Condition S13.B of the Permit, which outlines the requirements for the SWPPP's contents, including a site map; facility assessment; identification of BMPs necessary to provide all known, available, and reasonable methods of prevention, control, and treatment ("AKART") of stormwater pollution; incorporation of BMPs to reduce potential fecal coliform contamination; and employee training. Weyerhaeuser's SWPPP fails to satisfy Condition S13.B.1 because it does not contain a site map that identifies the scale or relative distances between significant structures and drainage systems; significant features; the stormwater drainage and discharge structures and identify, by name, any other party other than Weyerhaeuser that owns any stormwater drainage or discharge structures; the stormwater drainage areas for each stormwater discharge outfall; each sampling location; paved areas and buildings; areas of pollutant contact (actual or potential) associated with specific industrial activities; and surface water locations (including wetlands and drainage ditches). The SWPPP's facility assessment fails to satisfy Condition S13.B.2 of the Permit because it does not adequately include a description of the facility, an inventory of facility activities and equipment that contribute to or have the potential to contribute any pollutants to stormwater, and an inventory of materials that contribute to or have the potential to contribute pollutants to stormwater.

10

Weyerhaeuser's SWPPP fails to satisfy Condition S13.B.3 of the Permit because it failed to completely identify the BMPs necessary to provide AKART of stormwater pollution, ensure the discharge meets the discharge limits and benchmarks set by Condition S1 of the Permit, and ensure the discharge does not cause or contribute to a violation of water quality standards. The SWPPP fails to satisfy Condition S13.B.3.a of the Permit because it does not adequately describe each BMP selected to eliminate or reduce the potential to contaminate stormwater and prevent violations of water quality standards, or explain in detail how and where the selected BMPs will be implemented. The SWPPP fails to satisfy the requirements of Condition S13.B.3.b of the Permit because it does not sufficiently include and implement good housekeeping and preventative maintenance. For good housekeeping, the SWPPP must include BMPs that define ongoing maintenance and cleanup, as appropriate, of areas which may contribute pollutants to stormwater discharges. Moreover, the SWPPP must include the schedule/frequency for completing each housekeeping task, based upon industrial activity, sampling results, and observations made during inspections. For preventative maintenance, the SWPPP must include BMPs to inspect and maintain the stormwater drainage, source controls, treatment systems (if any), and plant equipment and systems that could fail and result in contamination of stormwater, along with the schedule/frequency for completing each maintenance task. Weyerhaeuser's SWPPP does not meet all the requirements of good housekeeping and preventative maintenance, as required by this condition. Moreover, the SWPPP fails to satisfy Condition S13.B.3.c of the Permit because not all of the selected BMPs chosen are included in the Stormwater Management Manual for Western Washington or approved by Ecology.

The SWPPP fails to satisfy the requirements of Condition S13.B.4 of the Permit because it does not adequately incorporate and implement the following BMPs to reduce potential fecal coliform contamination in stormwater runoff: (1) use all known, available and reasonable methods to prevent rodents, birds, and other animals from feeding/nesting/roosting at the facility; (2) perform at least one annual dry weather inspection of the stormwater system to identify and eliminate sanitary sewer cross-connections; (3) install structural source control BMPs to address on-site activities and sources that could cause bacterial contamination (e.g., dumpsters, compost piles, food waste, and animal products); (4) implement operational source control BMPs to prevent bacterial contamination from any known sources of fecal coliform bacteria (e.g., animal waste); and (5) conduct additional bacteria-related sampling and/or BMPs, if ordered by Ecology on a case-by-case basis.

Weyerhaeuser's SWPPP fails to satisfy Condition S13.B.5 of the Permit because it does not include BMPs to provide SWPPP training for employees who have duties in areas of industrial activities subject to this permit. At a minimum, the training plan shall include the following content: an overview of what is in the SWPPP; how employees make a difference in complying with the SWPPP and preventing contamination of stormwater; and spill response procedures, good housekeeping, maintenance requirements, and material management practices. Moreover, the training plan must include how Weyerhaeuser will conduct training; the frequency and schedule of training occurring at least annually, at a minimum; and a log of the dates on which specific employees received training. Weyerhaeuser's SWPPP does not sufficiently contain this required information.

11

The SWPPP fails to satisfy the requirements of Condition S13.C.1 of the Permit that Weyerhaeuser conduct and document visual inspections of the site weekly. Condition S13.C.2 of the Permit specifies the contents of the inspections, including the following: observations made at stormwater sampling locations and any other areas where stormwater is discharged off-site or to waters of the state; observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, or odor in the stormwater; observations for the presence of illicit discharges such as domestic wastewater, noncontact cooling water, or process wastewater; a verification that the descriptions of potential pollutant sources identified in the SWPPP are accurate; a verification that the site map in the SWPPP reflects current conditions; and an assessment of all BMPs that have been implemented, noting effectiveness of BMPs inspected, locations of BMPs that need maintenance, reason maintenance is needed and a schedule for maintenance, locations where additional or different BMPs are needed and the rationale for the additional or different BMPs. Furthermore, Condition S13.C.2.g requires that Weyerhaeuser record the results of each inspection in an inspection report or checklist and keep the records on-site, as part of the SWPPP, for Ecology review. Weyerhaeuser must ensure each inspection report documents the observations, verifications and assessments required in S13.C.2 and includes: time and date of the inspection; locations inspected; statements that, in the judgement of 1) the person conducting the site inspection, and 2) the person described in General Condition G2., the site is either in compliance or out of compliance with the SWPPP and this permit; a summary report and a schedule of implementation of the remedial actions that Weyerhaeuser plans to take if the site inspection indicates that the site is out of compliance; name, title, and signature of the person conducting site inspection and the following statement: "I certify that this report is true, accurate, and complete, to the best of my knowledge and belief." Finally, Weyerhaeuser must report non-compliance identified during an inspection in accordance with the requirements of Special Conditions S3.F. Weyerhaeuser's SWPPP fails to meet each requirement specified by this Condition and Weyerhaeuser has failed to conduct and document the weekly inspections as prescribed by Condition S13.C of the Permit each week since August 1, 2019.

### G.     Violations of Requirements for Reporting Permit Violations.

Condition S3.F of the Permit requires Weyerhaeuser to take certain actions if it is unable to comply with any of the conditions of the Permit. In such circumstances, Weyerhaeuser must immediately take action to stop, contain, and cleanup unauthorized discharges or otherwise stop the noncompliance and correct the problem. Weyerhaeuser violated these requirements each time since August 1, 2019 that it exceeded one of the effluent limitations identified in Conditions S1.A and S1.B of the Permit, including those exceedances identified in sections II.A and II.B of this notice letter, by failing to discontinue the unauthorized discharges.

Condition S3.F.b of the Permit requires that Weyerhaeuser report certain events to Ecology within 24 hours of becoming aware of the event, including: any noncompliance that may endanger health or the environment, unless previously reported under immediate reporting requirements; any unanticipated bypass that causes an exceedance of any effluent limit in the permit; any upset that causes an exceedance of an effluent limit in the permit; any violation of a maximum daily or instantaneous maximum discharge limit identified in Condition S1.A and S1.B of the Permit; and any overflow prior to the treatment works, whether or not such overflow

endangers health or the environment or exceeds any effluent limit in the permit. Upon information and belief, Weyerhaeuser has violated these requirements each time since August 1, 2019 it exceeded a maximum daily or instantaneous maximum discharge limit identified in Condition S1.A and S1.B of the Permit, including each such exceedance identified in sections II.A and II.B of this notice letter.

Condition S3.F.c of the Permit requires that Weyerhaeuser submit a report within five days of becoming aware of an event requiring reporting to Ecology under Condition S3.F.b of the Permit. The report must contain: (1) a description of the noncompliance and its cause; (2) the period of noncompliance, including exact dates and times; (3) the estimated time the noncompliance is expected to continue; (4) steps taken or planned to reduce, eliminate, and prevent recurrence of the noncompliance; and (5) if the noncompliance involves an overflow prior to the treatment works, an estimate of the quantity of untreated overflow. Upon information and belief, Weyerhaeuser has violated these requirements by failing to timely submit an accurate report containing all required information each time since August 1, 2019 discharges exceeded a maximum daily or instantaneous maximum discharge limit identified in Condition S1.A and S1.B of the Permit, including each such exceedance identified in sections II.A and II.B of this notice letter.

## III.   VIOLATIONS OF ECOLOGY ADMINISTRATIVE ORDER NO. 18227

Ecology issued Administrative Order No. 18227 ("Order") on August 7, 2020 directing Weyerhaeuser to take various actions in response to its repeated violations of the Permit. Upon information and belief, Weyerhaeuser is in violation of the Order because it has failed to timely and completely fulfill the Order's requirements.

The Order requires that Weyerhaeuser submit to Ecology for review and approval by November 1, 2020 a Stormwater System Evaluation. The Stormwater System Evaluation must include the following, at a minimum: i. identification of all stormwater drainage structures, conveyances, pump stations, etc. which collect and drain stormwater off the property; ii. all locations where stormwater discharges leave the property, including identification of potential sampling or measurement locations for compliance monitoring; iii. all sources of non-stormwater which is routinely discharged or drained off the property via stormwater structures identified in sections 1.a.i and 1.a.ii of the Order; iv. sources of potential stormwater contamination; v. identification of locations at which process wastewater or sanitary sewer system overflows could result in discharges off the property; and vi. storage areas and structures which have the potential to overflow or leak and result in discharges off the property. Upon information and belief, Weyerhaeuser is in violation of these requirements of the Order because it has failed to timely submit a Stormwater System Evaluation that meets each requirement of the Order identified above.

The Order requires that Weyerhaeuser submit to Ecology for review and approval by November 1, 2020 a Stormwater Characterization Study Sampling Plan. The Stormwater Characterization Study Sampling Plan must include the following, at a minimum: i. proposed sampling locations, including the locations identified in 1.a.ii of the Order (if any of the locations identified in 1.a.ii of the Order are not proposed for sampling, the Sampling Plan must include

13

justification for not conducting monitoring at the specified location); ii. Proposed parameters for monitoring (the following parameters must be monitored or measured: pH, 5-day biochemical oxygen demand (BOD5), chemical oxygen demand (COD), dissolved oxygen (DO), oil and grease, fecal coliform, e. coli, klebsiella, settleable solids, turbidity, zinc, and copper); iii. proposed method for quantifying flow rate or volume discharged from each sample point; iv. proposed sampling frequency at each sample location, including the minimum number of samples necessary for each sampling location to properly characterize the discharge point; v. sampling techniques to be utilized at each sampling point; vi. analytical methods and minimum detection and quantitation levels to be achieved for each parameter; vii. for field measurements (e.g., pH, dissolved oxygen, etc.), the Sampling Plan must identify the type of instrument, parameter to be measured, calibration frequency, and technique for calibration. The Order requires that Weyerhaeuser complete the Stormwater Characterization Study by March 15, 2021 in accordance with a Sampling Plan that has been approved by Ecology. Weyerhaeuser submitted a Stormwater Characterization Study Sampling Plan on October 31, 2020. Ecology conditionally approved the plan, while also noting several deficiencies requiring correction, via letter dated December 3, 2020. Weyerhaeuser submitted a Stormwater Characterization Study on March 15, 2021. Ecology identified numerous deficiencies with Weyerhaeuser's study via letter dated July 8, 2021. Upon information and belief, Weyerhaeuser is in violation of the requirements of the Order identified above because it has failed to timely submit a Stormwater Characterization Study Sampling Plan that meets each of the requirements of the Order, because it has failed to timely implement a Stormwater Characterization Study Sampling Plan that meets each of the requirements of the Order identified above and that has been approved by Ecology, and because it has failed to timely submit a the Stormwater Characterization Study that meets each of the requirements of the Order identified above.

The Order requires that Weyerhaeuser submit to Ecology by March 15, 2021 for approval an updated NPDES permit application that includes the following information, at a minimum: a. the results of the Stormwater System Evaluation, including drawings with all of the required information from 1.a.i through 1.a.vi of the Order clearly identified; b. the results of the Stormwater Characterization Study (all sample results collected must be included; if a contract laboratory is used for analysis of any of the parameters, the associated laboratory reports must be submitted); c. a description of all non-stormwater sources that routinely discharge or drain from the property (for the purposes of this requirement, non-stormwater discharges do not include discharges which flow to a wastewater treatment facility); i. if the discharge was not sampled during the Stormwater Characterization Study, Weyerhaeuser must include the expected characteristics and anticipated volumes of the non-stormwater discharge (methods for determining the expected characteristics and volumes of the non-stormwater discharge must be included); ii. an evaluation of all Best Management Practices (BMPs) currently installed, or planned to be installed, to control pollutants and/or flow volumes from non-stormwater discharges) iii. an evaluation of the feasibility of eliminating the non-stormwater discharge or collecting the non-stormwater discharge for treatment at Nippon Dynawave's Industrial Wastewater Treatment Plant must be included; d. for all stormwater discharge points that were not sampled during the Stormwater Characterization Study, Weyerhaeuser must include the known or expected characteristics and anticipated volumes for the stormwater discharge from the property (information used to determine the characteristics and volumes of the discharge must be included); e. identify all existing BMPs and the purpose of the BMP, including the targeted

14

pollutant(s) of concern (BMP locations must be identified on the drawing required in 3.a of the Order); f. a description of the cleaning and maintenance activities necessary for the stormwater collection, conveyance, and treatment systems, including BMPs. Upon information and belief, Weyerhaeuser is in violation of these requirements of the Order because it has failed to timely submit an updated NPDES permit application that includes all of the required information identified above.

## IV.   PARTY GIVING NOTICE OF INTENT TO SUE.

The full name, address, and telephone number of the party giving notice is:

Columbia Riverkeeper
407 Portway Ave, Suite 301
Hood River, OR 97031
(541) 399-5312

## V.   ATTORNEYS REPRESENTING COLUMBIA RIVERKEEPER.

The attorneys representing Columbia Riverkeeper in this matter are:

Erin Saylor, Staff Attorney
Columbia Riverkeeper
1125 S.E. Madison Street, Suite 103A
Portland, Oregon 97214
(541) 399-4775
erin@columbiariverkeeper.org

Brian A. Knutsen
Kampmeier & Knutsen, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515
brian@kampmeierknutsen.com

Jessica Durney
Kampmeier & Knutsen, PLLC
811 First Avenue, Suite 468
Seattle, Washington 98104
(206) 739-5184
jessica@kampmeierknutsen.com

## VI.   CONCLUSION.

The above-described violations reflect those indicated by the information currently available to Columbia Riverkeeper based on its review of the public record. These violations are ongoing. Columbia Riverkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C § 1319(d), Weyerhaeuser is subject to a separate daily penalty assessment for each violation. The maximum daily penalty assessment for each violation is $56,460. 40 C.F.R. § 19.4. In addition to civil penalties, Columbia Riverkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Also, Section

505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Columbia Riverkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. Columbia Riverkeeper intends, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Weyerhaeuser under Section 505(a) of the CWA for the violations described herein. If you believe that any of the allegations in this Notice are incorrect or based on incomplete information in the public record, please bring those facts to our attention.

Very truly yours,

KAMPMEIER & KNUTSEN, PLLC

By: _____

Brian A. Knutsen

16

## CERTIFICATE OF SERVICE

I, Brian A. Knutsen, declare under penalty of perjury of the laws of Washington and the

United States that I am counsel for Columbia Riverkeeper and that on December 21, 2021, I

caused copies of the foregoing Notice of Intent to Sue Under the Clean Water Act to be served

on the following by depositing them with the United States Postal Service, certified mail, return

receipt requested, postage prepaid:

Managing Agent
Weyerhaeuser NR Company
220 Occidental Ave S.
Seattle, WA 98104-3120

Managing Agent
Weyerhaeuser NR Company
P.O. Box 931
Longview, WA 98632

Registered Agent
Corporation Service Company
300 Deschutes Way SW, Suite 208
MC-CSC1
Tumwater, WA 98501

Director Laura Watson
Washington Department of Ecology
P.O. Box 47600
Olympia, WA 98504-7600

Managing Agent
Weyerhaeuser NR Company
1999 Industrial Way
Longview, WA 98632

Administrator Michael S. Regan
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W. (Mail Code 1101A)
Washington DC 20460

Acting Regional Administrator Michelle Pirzadeh
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

Brian A. Knutsen, WSBA No. 38806

17

# EXHIBIT 2

| Effluent Limits:  East Pond (Outfall 003B) Latitude 46.1175    Longitude 122.954167 | | |
|---|---|---|
| **Parameter** | **Average Monthly [a]** | **Maximum Daily [b]** |
| Biochemical Oxygen Demand (5-day) ($BOD_5$) | 117.6 milligrams per liter (mg/L) | 354.8 milligrams per liter (mg/L) |
| Settleable Solids (SS) | N/A | 0.1 milliliters per liter (mL/L) |
| Oil & Grease | 10 mg/L | 15 mg/L |
| Turbidity | 372 NTU | 1110 NTU |
| **Parameter** | **Average Quarterly [e]** | **Maximum Daily [b]** |
| Copper | 13.6 micrograms per liter ($\mu$g/L) | 34.5 micrograms per liter ($\mu$g/L) |
| **Parameter** | **Average Monthly Minimum [c]** | **Minimum Daily [d]** |
| Dissolved Oxygen | 4.7 mg/L | 1.9 mg/L |
| **Parameter** | **Daily Minimum** | **Daily Maximum** |
| pH | 6.0 standard units | 9.0 standard units |

| | |
|---|---|
| a | Average monthly effluent limit means the highest allowable average of daily discharges over a calendar month.  To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a calendar month and divide this sum by the total number of daily discharges measured. |
| b | Maximum daily effluent limit is the highest allowable daily discharge.  The daily discharge is the average discharge of a pollutant measured during a calendar day.  For pollutants with limits expressed in units of mass, calculate the daily discharge as the total mass of the pollutant discharged over the day.  This does not apply to pH or temperature. |
| c | Average monthly minimum effluent limit means the lowest allowable average of daily discharges over a calendar month.  To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a calendar month and divide this sum by the total number of daily discharges measured. |

| d | Minimum daily effluent limit is the lowest allowable daily discharge. The daily discharge is the average discharge of a pollutant or parameter measured during a calendar day. For pollutants with limits expressed in units of mass, calculate the daily discharge as the total mass of the pollutant discharged over the day. |
|---|---|
| e | Average quarterly effluent limit means the highest allowable average of daily discharges over a quarter (January - March, April - June, July - September, and October - December). To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a quarter and divide this sum by the total number of daily discharges measured during that quarter. |

| Effluent Limits: Outfall 004B<br>Latitude 46.123611    Longitude 122.963889 | | |
|---|---|---|
| **Parameter** | **Average Monthly [a]** | **Maximum Daily [b]** |
| Biochemical Oxygen Demand (5-day) (BOD$_5$) | 7.1 milligrams per liter (mg/L) | 20.0 milligrams per liter (mg/L) |
| Settleable Solids (SS) | N/A | 0.1 mL/L |
| Oil & Grease | 10 mg/L | 15 mg/L |
| Turbidity | 45 NTU | 103 NTU |
| **Parameter** | **Average Monthly Minimum [c]** | **Minimum Daily [d]** |
| Dissolved Oxygen | 2.5 mg/L | 1.8 mg/L |
| **Parameter** | **Daily Minimum** | **Daily Maximum** |
| pH | 6.0 standard units | 9.0 standard units |

| a | Average monthly effluent limit means the highest allowable average of daily discharges over a calendar month. To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a calendar month and divide this sum by the total number of daily discharges measured. |
|---|---|
| b | Maximum daily effluent limit is the highest allowable daily discharge. The daily discharge is the average discharge of a pollutant measured during a calendar day. For pollutants with limits expressed in units of mass, calculate the daily discharge as the total mass of the pollutant discharged over the day. This does not apply to pH or temperature. |

| c | Average monthly minimum effluent limit means the lowest allowable average of daily discharges over a calendar month.  To calculate the discharge value to compare to the limit, you add the value of each daily discharge measured during a calendar month and divide this sum by the total number of daily discharges measured. |
|---|---|
| d | Minimum daily effluent limit is the lowest allowable daily discharge.  The daily discharge is the average discharge of a pollutant or parameter measured during a calendar day.  For pollutants with limits expressed in units of mass, calculate the daily discharge as the total mass of the pollutant discharged over the day. |

| Effluent Limitation Violations at Outfall 003B<br>Stormwater Discharges to CDID No. 3 | | | |
|---|---|---|---|
| Monitoring Period | Parameter | Effluent Limit | Monitoring Result |
| 10/1/2019 (Wk. 1) | Settleable Solids | <0.1 mL/L, Daily max | 0.3 mL/L |
| May 2020 | Oil & Grease | < 10 mg/L, monthly avg. | 10.7 mg/L |
| 2/12/2021 | pH | >= 6.0, daily minimum | 5.5 |
| 2/25/2021 | pH | >= 6.0, daily minimum | 5.84 |
| 2/26/2021 | pH | >= 6.0, daily minimum | 5.76 |
| 9/21/2021 (Wk. 4) | Settleable Solids | <0.1 mL/L, Daily max | 0.2 mL/L |
| 11/17/2021 | pH | >= 6.0, daily minimum | 5.79 |
| December 2021 | BOD5 | <= 117.6 mg/L | 193.47 mg/L |
| 12/7/2021 | BOD 5 | <= 354.8 mg/L | 429 mg/L |

| Effluent Limitation Violations at Outfall 004B<br>Stormwater Discharges to CDID No. 3 | | | |
|---|---|---|---|
| Monitoring Period | Parameter | Effluent Limit | Monitoring Result |
| 9/10/2019 | BOD5 | 20 mg/L, daily max | 33 mg/L |
| September 2019 | BOD5 | 7.1 mg/L, monthly avg. max | 13.175 mg/L |
| 11/26/2019 | BOD5 | 20 mg/L, daily max | 27 mg/L |
| November 2019 | BOD5 | 7.1 mg/L, monthly avg. max | 14.5 mg/L |
| November 2019 | Turbidity | 45 NTU, monthly average | 63.60 NTU |
| 12/3/2019 | BOD5 | 20 mg/L, daily max | >87 mg/L |
| 12/10/2019 | BOD5 | 20 mg/L, daily max | 57 mg/L |
| 12/23/2019 | BOD5 | 20 mg/L, daily max | 36 mg/L |
| 12/30/2019 | BOD5 | 20 mg/L, daily max | 24 mg/L |

| December 2019 | BOD5 | 7.1 mg/L, monthly avg. max | 44.4 mg/L |
|---|---|---|---|
| December 2019 | Turbidity | 45 NTU, monthly average | 68.2 NTU |
| 1/28/2020 | BOD5 | 20 mg/L, daily max | 25 mg/L |
| January 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 13.5 mg/L |
| January 2020 | Turbidity | 45 NTU, monthly average | 46.6 NTU |
| February 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 17.4 mg/L |
| 2/17/2020 | BOD5 | 20 mg/L, daily max | 23 mg/L |
| February 2020 | Turbidity | 45 NTU, monthly average | 52.98 NTU |
| March 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 11.56 mg/L |
| 3/31/2020 | BOD5 | 20 mg/L, daily max | 25 mg/L |
| March 2020 | Turbidity | 45 NTU, monthly average | 63.76 NTU |
| 3/31/2020 | Turbidity | 103 NTU, daily max | 127 NTU |
| April 2020 | Turbidity | 45 NTU, monthly average | 45.64 NTU |
| April 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 10.4 mg/L |
| 4/23/2020 | BOD5 | 20 mg/L, daily max | 29 mg/L |
| May 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 11.85 mg/L |
| 5/12/2020 | BOD5 | 20 mg/L, daily max | 22 mg/L |
| October 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 7.75 mg/L |
| November 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 36.9 mg/L |
| 11/3/2020 | BOD5 | 20 mg/L, daily max | 39.9 mg/L |
| 11/10/2020 | BOD5 | 20 mg/L, daily max | 34 mg/L |
| 11/10/2020 | Settleable Solids | <= 0.1 mL/L, daily max | 0.2 mL/L |
| 11/17/2020 | BOD5 | 20 mg/L, daily max | 45.2 mg/L |
| 11/24/2020 | BOD5 | 20 mg/L, daily max | 28.5 mg/L |
| November 2020 | Dissolved Oxygen | >= 2.5 mg/L, av monthly | 1.82 mg/L |
| November 2020 | Turbidity | 45 NTU, monthly average | 65 NTU |
| 12/1/2020 | BOD5 | 20 mg/L, daily max | 37.8 mg/L |
| 12/22/2020 | BOD5 | 20 mg/L, daily max | 29.5 mg/L |
| December 2020 | BOD5 | 7.1 mg/L, monthly avg. max | 20.1 mg/L |

| December 2020 | Turbidity | 45 NTU, monthly average | 47.7 NTU |
|---|---|---|---|
| 1/5/2021 | BOD5 | 20 mg/L, daily max | 33.3 mg/L |
| January 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 18.1 mg/L |
| 1/12/2021 | Turbidity | 103 NTU, daily max | 193 NTU |
| January 2021 | Turbidity | 45 NTU, monthly average | 85 NTU |
| February 2021 | Turbidity | 45 NTU, monthly average | 47.3 NTU |
| 3/2/2021 | BOD5 | 20 mg/L, daily max | 21.7 mg/L |
| March 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 12.9 mg/L |
| March 2021 | Turbidity | 45 NTU, monthly average | 49.6 NTU |
| May 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 7.15 mg/L |
| May 2021 | Turbidity | 45 NTU, monthly average | 45.8625 NTU |
| June 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 8.4 mg/L |
| 6/15/2021 | BOD5 | 20 mg/L, daily max | 24.3 mg/L |
| July 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 13.2 mg/L |
| 7/6/2021 | BOD5 | 20 mg/L, daily max | 44.3 mg/L |
| August 2021 | BOD5 | 7.1 mg/L, monthly avg. max | 20.95 mg/L |
| 8/17/2021 | BOD5 | 20 mg/L, daily max | 94.9 mg/L |
| 9/14/2021 (Wk. 3) | Settleable Solids | <0.1 mL/L, Daily max | 1.4 mL/L |
| January 2022 | BOD5 | 7.1 mg/L, monthly avg. max | 14.45 mg/L |
| 1/11/2022 | BOD5 | 20 mg/L, daily max | 52.80 mg/L |

# EXHIBIT 3

| Violations of the Discharge Monitoring and Reporting Requirements | | |
|---|---|---|
| Monitoring Period | Outfall(s) | Parameter / Monitoring Frequency |
| August 2019 | 002B, 005B, 006B | Total Suspended Solids / Monthly |
| August 4–10, 2019 (wk. 2) | 002B | pH / Weekly |
| October 1 – November 25, 2019 | 003B | Flow, continuous |
| October 2019 | 002B, 005B, 006B | Total Suspended Solids / Monthly |
| March 14–20, 2021 (wk. 3) | 003B, 004B | Settleable Solids / weekly |
| July 18–24, 2021 (wk. 4) | 003B, 004B | Settleable Solids / weekly |
| August 14 – September 10, 2021 | 004B | Flow, continuous |
| December 26–31, 2021 (wk. 5) | 003B, 004B | Settleable Solids / weekly |
| December 26–31, 2021 (wk. 5) | 003B, 004B | Turbidity / weekly |
| December 26–31, 2021 (wk. 5) | 003B, 004B | Total BOD / weekly |
| December 26–31, 2021 (wk. 5) | 003B, 004B | Dissolved oxygen / weekly |